**DISABLED VETERANS TRUST, C.**
Charles Franklin d/b/a Franklin
Oil, Co., Appellant,

v.

**PORTERFIELD CONSTRUCTION,**
**INC., Respondent.**

No. WD 55728.

Missouri Court of Appeals,
Western District.

April 27, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 1, 1999.

Application for Transfer Denied
Aug. 24, 1999.

Carl Kimbrell, II, Kansas City, for appellant.

Thomas R. Hill, Kansas City, for respondent.

Before: Presiding Judge HAROLD L. LOWENSTEIN, Chief Judge BRECKENRIDGE and Judge SPINDEN.

## FACTUAL/PROCEDURAL BACKGROUND

LOWENSTEIN, Judge.

The sole issue in this case between a landlord and a tenant is the effect of the language used in provisions of a lease between appellant-landlord and respondent-tenant as to whether the tenant is liable for damages caused by his negligence. Appellant C. Charles Franklin d/b/a Franklin Oil Company (Franklin) seeks reversal of a summary judgment granted in favor of his tenant, the respondent, Jerry Porterfield d/b/a Porterfield Construction, Inc. (Porterfield).

Franklin is the owner of a building located at 13910 Noland Court in Independence, Missouri. The total square footage of the building is 14,000 square feet. Unit F, the premises leased to Porterfield, consisted of 1,700 square feet, or approximately ten percent of the entire building. The remaining 12,300 square feet of the building were leased to other tenants. The lease was a form lease.

In May 1992, Porterfield's employees were performing welding or cutting operations on a truck that had been driven inside of the building and parked in Unit F. Porterfield used the truck to transport gasoline to job sites at different locations in the state. The welding or cutting operations caused a fire that resulted in damages to Unit F, as well as damages to property owned by other tenants of the building, including Disabled Veteran's Trust of Ernestine Schumann Heink Chapter, Inc. (DAV).[1]

C.N.A. Insurance Companies (C.N.A.) insured Franklin at the time of the fire. C.N.A. paid Franklin $502,752 for losses resulting from the fire. C.N.A. is subrogated to those amounts in this litigation.

In his first amended petition, Franklin alleged negligence on the part of Porterfield and his employees in using, maintaining and operating the truck by performing welding and cutting operations which thereby caused a fire. Franklin further stated that "[d]efendants negligently caused, permitted and allowed sparks, hot slag, hot metal, oxide or other hot inflammable materials to escape and set fire to the building and contents owned by Plaintiff Franklin...." Count one of Franklin's claim states that due to Porterfield's negligence, Franklin's damages to his building and contents, and loss of income and profits are in excess of $500,000. Counts two and three also alleged Porterfield violated a number of ordinances of the City of Independence, Missouri.

In his answer, Porterfield denied negligence and asserted that the lease exonerated him from any liability for damages caused by the fire.

In Porterfield's motion for summary judgment, he asserted that the damages claimed by the landlord were barred by certain provisions set forth in the lease. In that motion, Porterfield cited the following three separate paragraphs of the lease in order to prove that the damages claimed by Franklin were barred: the insurance clause, the redelivery clause, and the waiver of subrogation clause.

## INSURANCE CLAUSE

LESSEE shall comply with all insurance regulations so the lowest fire, lightning, explosion, extended coverage and liability insurance rates may be obtained; and nothing shall be done or kept in or on the premises by LESSEE which will cause an increase in the premium for any of such insurance on the *premises* or on any building of which the premises are a part or on any contents located therein, over the rate usually obtained for the proper use of the premises permitted by this lease or which cause cancellation of any such insurance.

---

1. Since DAV and Porterfield reached a settlement as to DAV's claims, DAV dismissed its appeal, leaving Franklin as the sole appellant.

If during the term of this lease the premium for fire or what is commonly known as extended coverage insurance should be changed so as to cause an increase in premium, then LESSEE shall pay, as additional rent, the amount of such increase, which amount shall be payable within fifteen (15) days from the date of LESSOR'S notice of an amount so due hereunder. Should LESSEE occupy less than the whole of the property insured, LESSEE'S obligation hereunder shall be limited to a pro rata portion of such increase based on the area of the premises to the total rentable space of the said property of which the premises are a part. (emphasis added)

## REDELIVERY CLAUSE

At the expiration of the term, LESSEE shall surrender the *premises* broom clean, and in as good condition as the reasonable use thereof will permit. All damage or injury to the premises not caused by fire or other casualty and all damage to glass, windows and doors shall be promptly repaired by the LESSEE. (emphasis added)

## WAIVER OF SUBROGATION CLAUSE

As part of the consideration for this lease, each of the parties hereto does hereby release the other party hereto from all liability for damage due to any act or neglect of the other party (except as hereinafter provided) occasioned to *property owned* by said parties which is or might be incident to or the result of a fire or any other casualty against loss for which either of the parties is now carrying or hereafter may carry insurance; provided, however, that the releases herein contained shall not apply to any loss or damage occasioned by the willful, wanton or premeditated negligence of either of the parties hereto, and the parties hereto further covenant that any insurance they obtain on their respective properties shall contain an appropriate provision whereby the insurance company, or companies, consent to the mutual release of liability contained in this paragraph (emphasis added)

The trial court, in sustaining Porterfield's motion, found the insurance clause and the redelivery clause significant, opining that "the insurance clause provides that lessee shall comply with insurance regulations to allow lessor to procure the lowest possible insurance rates for the entire premises" and that the "redelivery clause excepts fire from damage that lessee is responsible for upon redelivery of the premises." The trial court also found the waiver of subrogation clause constituted a general release of liability to all parties if the exigency of fire was to occur due to negligence. The court's order relied on the Missouri case of *Rock Springs Realty, Inc. v. Waid,* 392 S.W.2d 270 (Mo. banc 1965). *Rock Springs* held that where a redelivery clause that excepted a fire loss was coupled with an agreement for lessor to carry adequate insurance for fire, such contract will constitute an exoneration of the lessee from liability for fire damage even if it is negligently caused.

In his sole point on appeal, Franklin claims any provisions of the lease which may release Porterfield from liability for his negligence apply only to Unit F, the area rented by Porterfield, not the entire structure. Franklin asks this court to find that the trial court erred by granting Porterfield's motion for summary judgment.

## STANDARD OF REVIEW

When considering an appeal from the granting of summary judgment, the court will review the record in the light most favorable to the party against whom judgment was entered. Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion. The non-movant is accorded the benefit of all reasonable inferences from the record. This court's review is essentially de novo. The criteria on appeal for testing the propriety of summary judgment are no differ-

ent from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. The propriety of summary judgment is purely an issue of law. As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply,* 854 S.W.2d 371, 376 (Mo. banc 1993) (citations omitted) Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law. *Id.* at 377. Construction of a contract is generally a matter of law. *Burns v. Black & Veatch Architects, Inc.,* 854 S.W.2d 450, 453 (Mo.App.1993). Therefore, summary judgment is appropriate when no factual issues remain and the meaning of the contract is so clear that it may be determined from the document's four corners. *Id.*

## DISCUSSION

■ In determining whether or not Franklin's argument is valid, this court must first ascertain the plain and ordinary meaning of the waiver of subrogation clause upon which Franklin relies in making his argument before this court. Both parties have agreed that the "redelivery clause" applies only to the leased premises and that the "insurance clause" does not release Porterfield of liability; therefore, this court will discuss only the waiver of subrogation clause in ruling on the trial court's granting of Porterfield's summary judgment motion.

Franklin distinguishes the case at bar from *Rock Springs* by asserting factual differences between the case at bar and the case in *Rock Springs.* Franklin argues that in *Rock Springs,* the entire building was leased to the lessee for use as a restaurant, while Porterfield leased only ten percent of the building structure. Additionally, the appellant states that the court in *Rock Springs* did not address liability for damages caused by the fire to property not leased to the lessee. Calling

*Rock Springs* inapposite, Franklin claims that the trial court erroneously declared and applied the law by entering summary judgment in Porterfield's favor. In essence, Franklin argues that even if the waiver of subrogation clause is applicable, it should be limited to Porterfield's liability for damages to the leasehold premises. Franklin cites cases from other jurisdictions in support of his argument including *Millican of Washington, Inc., v. Wienker Carpet Service, Inc.,* 44 Wash.App. 409, 722 P.2d 861 (1986); *Hardware Mutual Insurance Company of Minnesota v. C.A. Snyder, Inc.,* 242 F.2d 64 (3 rd Cir.1957); *U.S. Fidelity & Guaranty Co. v. Let's Frame It, Inc.,* 759 P.2d 819 (Colo.App. 1988); *Agra–By–Products, Inc. v. Agway, Inc.,* 347 N.W.2d 142 (N.D.1984).

Porterfield, on the other hand, asks this court to determine the plain and ordinary meaning of the words "property owned."

"... each of the parties hereto does hereby release the other party hereto from all liability for damage due to any act of neglect of the other party (except as hereinafter provided) occassioned to property owned by said parties which is or might be incidental to or the result of a fire or other casualty against loss for which either of the parties is now carrying or may carry insurance ..."

In his brief, Porterfield describes Franklin's argument as follows: Porterfield argues that Franklin wants to limit this waiver of subrogation to the premises leased by Porterfield, "[b]ut the plaintiff didn't use the word *premises* or *leased premises,* but merely used the word 'property.' Likewise, in the redelivery clause relied upon by plaintiff, the word 'premises' is used." From this language, Porterfield asserts that the term "property owned by the plaintiff" applies to the entire building owned by Franklin, not just to Unit F.

Porterfield further argues that Franklin has not cited any case that makes a waiver of subrogation clause unenforceable, or that it should be restricted to the leased

premises when the language states otherwise.

Respondent believes he should prevail based on *Rock Springs* upon which the trial court relied. However, the facts in *Rock Springs* make the case inapplicable in this situation. In *Rock Springs* the crux of the issue was "whether the provisions of the written lease constituted an exoneration or release of the lessees from liability for a fire caused by their negligence or that of their employees." *Rock Springs*, 392 S.W.2d at 271. The court in *Rock Springs* went on to hold that where a redelivery clause that excepted fire was coupled with an agreement for lessor to carry adequate insurance for fire, such contract will constitute an exoneration of the lessee from liability for fire damage even if it is negligently caused. *Rock Springs* did not involve an interpretation of a waiver of subrogation clause as is present in the case at hand. It only involved a lease provision which required insurance and contained a redelivery clause.

Essentially, the respondent is asking this court to determine the plain and ordinary meaning of two words found in the waiver of subrogation clause contained in the lease agreement. Those two words are "property owned." Franklin attempts to limit the words "property owned" to premises leased by Porterfield. Porterfield, conversely, argues that by utilizing the term "property owned," it was Franklin's intent that the clause apply to the entire building, not just to the leased premises.

■ Waiver of subrogation clauses are valid and enforceable. *Butler v. Mitchell–Hugeback, Inc.*, 895 S.W.2d 15 (Mo. banc 1995). "The cardinal rule in the interpretation of a contract is to ascertain the intention of the parties and to give effect to that intention." *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973). Where the contract is unambiguous, intent is ascertained from the contract alone. *Id.; Carondelet Health Sys., Inc. v. Royal Gar-*

*dens Associates.*, 943 S.W.2d 669, 673 (Mo. App.1997). A disagreement by the parties as to the proper interpretation of the contract does not render the contract ambiguous. *Id.* In a contract, an ambiguity arises only where its terms are susceptible to fair and honest differences. *Carondelet*, 943 S.W.2d at 673; *CB Commercial Real Estate Group, Inc. v. Equity Partnerships Corp.*, 917 S.W.2d 641, 646 (Mo.App.1996). The determination of whether a contract is ambiguous is a question of law and properly decided by the court. *Id.* Additionally, this court notes the established principle of contract law that any ambiguity in a written instrument should be construed against the party which drafted the ambiguous language. *Parker v. Pulitzer Publishing Co.*, 882 S.W.2d 245, 249 (Mo.App. E.D.1994).

■ As the drafter of the lease agreement, Franklin had every opportunity to formulate the lease language as to tenant liability for damages caused to non-leased premises in a manner that would not be subject to conjecture. Unfortunately, he did not choose to cover this situation. The terms of the lease are not susceptible to fair and honest differences. *Carondelet*, 943 S.W.2d at 673. This court finds the term "property owned" to be an all encompassing term which demonstrates Franklin's intent to apply the waiver of subrogation to damage to the entire building, not merely damage to the leased premises. An ambiguity exists in a written instrument such as this lease, only if, in reading the lease as a whole, it is reasonably susceptible to different constructions. *Nickles v. Auntie Margaret Daycare Corp.*, 829 S.W.2d 614, 616 (Mo.App. E.D.1992). This court holds that the language in question here is simply not reasonably susceptible to different constructions. Therefore, the trial court did not err in sustaining Porterfield's motion for summary judgment.

The result reached by the trial court was correct and the judgment reached will

therefore be affirmed. The judgment is affirmed.

All Concur.