STATE of Missouri, ex rel., DIVISION OF CHILD SUPPORT ENFORCEMENT, and Brett C. Hill, a Minor, by Alexa Hightower as Next Friend, and Alexa Hightower, Respondent,

v.

Marc E. HILL, Appellant.

No. WD 58278.

Missouri Court of Appeals, Western District.

May 22, 2001.

As Modified Aug. 28, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 2001.

Troy L. Daugherty, Kansas City, for appellant.

Clinton Adams, Jr., Kansas City, for respondent.

Before ELLIS, P.J., LOWENSTEIN and BRECKENRIDGE, JJ.

BRECKENRIDGE, Judge.

Marc E. Hill appeals the dismissal of his motion for relief from a paternity judgment. On appeal, he claims that his mo-

tion was not barred by the applicable statute of limitations. Because this court finds that the trial court erred in not treating Mr. Hill's motion as an independent suit in equity to set aside the paternity judgment on the basis of extrinsic fraud, the judgment of the trial court dismissing his motion is reversed and the cause is remanded.

### Factual and Procedural Background

In December 1990, the Director of the Missouri Division of Child Support Enforcement (Director) entered a "Judgment and Order–Paternity" finding that Mr. Hill was the father of Brett C. Hill, born August 22, 1988. The judgment was based upon Mr. Hill's signed statement in which he agreed that he was Brett's natural father and that he owed an obligation to pay child support for Brett. This judgment was subsequently filed in the Jackson County Circuit Court. In June 1995, the Director ordered Mr. Hill to pay child support for Brett in the amount of $275 per month, provide health insurance for Brett, and be responsible for paying 100% of Brett's medical expenses not covered by insurance. Simultaneously, the Director entered an order directing that Mr. Hill's income be withheld to satisfy the child support obligation. These orders were also filed in the Jackson County Circuit Court.

On March 10, 1999, Mr. Hill filed a motion for relief from the December 1990 paternity judgment. In his motion, he alleged that he had recently submitted himself and Brett to paternity testing, and the paternity test conclusively established that he was not Brett's father. Mr. Hill alleged that Brett's mother, Alexa Hightower, had fraudulently misrepresented to the Director, the court, and Mr. Hill at the time the December 1990 paternity judgment was entered that Mr. Hill was Brett's father. Specifically, he alleged that prior to the entry of the December 1990 consent judgment, Ms. Hightower misrepresented to the Director, the court, and Mr. Hill that she had submitted Brett to paternity testing, and that the test had established that Mr. Hill was Brett's father. Mr. Hill claimed that he consented to the 1990 paternity judgment because of Ms. Hightower's misrepresentation regarding the results of the alleged paternity test. Mr. Hill asked the court to vacate the December 1990 paternity judgment pursuant to Rule 74.06(b) on the basis of fraud, misrepresentation, and the misconduct of the adverse party, Ms. Hightower.

Mr. Hill subsequently filed a motion for summary judgment. In his motion, he alleged that there were no genuine issues of material fact, and that he was entitled to judgment as a matter of law on his motion for relief from the December 1990 paternity judgment. Again, he asked that the court vacate the paternity judgment on the basis of fraud, misrepresentation, and Ms. Hightower's misconduct.

Ms. Hightower then filed a motion to dismiss Mr. Hill's motion for relief from the paternity judgment. In her motion, Ms. Hightower argued that the trial court should dismiss Mr. Hill's motion on three bases: (1) the motion was time-barred under § 210.826, RSMo Supp.1988, of the Uniform Parentage Act because that statute required that an action to declare the nonexistence of the presumed father's father-child relationship be brought no later than five years after the child's birth, and the child turned five on August 22, 1993; (2) Mr. Hill had no cause of action under § 210.826 because that statute applied only to presumed fathers as defined in § 210.822, and Mr. Hill did not meet any of the definitions of a "presumed" father, but rather was an "adjudged" father; (3) principles of *res judicata* and collateral

estoppel applied to bar any litigation after the December 1990 paternity judgment on the issue of Brett's paternity.

Mr. Hill filed suggestions in opposition to Ms. Hightower's motion to dismiss. In his suggestions, Mr. Hill argued that the limitation in § 210.826.1, RSMo Supp.1988, did not apply to bar his cause of action because the statute was amended in 1993 to abolish the five-year statute of limitations, and the amendment became effective prior to Brett's turning five years old. Mr. Hill also contended that he had standing to bring an action to declare the non-existence of the father and child relationship under § 210.826 because he met the definition of a "presumed" father under § 210.822. Finally, Mr. Hill argued that the principle of *res judicata* did not apply to bar his claim because of Ms. Hightower's fraud in obtaining the December 1990 judgment.

In response, Ms. Hightower filed a supplemental motion to dismiss Mr. Hill's motion. In her supplemental motion, Ms. Hightower argued that the 1993 amendment to § 210.826 became effective after Brett's fifth birthday and, therefore, the 1988 version, with its five-year statute of limitations, applied. Ms. Hightower also added a fourth basis for dismissing Mr. Hill's motion, which was that Mr. Hill's motion was untimely filed under Rule 74.06(c). Ms. Hightower argued that Mr. Hill was seeking to vacate the December 1990 paternity judgment on the bases of fraud, misrepresentation, or other misconduct of an adverse party under Rule 74.06(b), and Rule 74.06(c) requires that any motion to vacate a judgment or order on those bases must be made "not later than one year after the judgment or order was entered." Since Mr. Hill's motion was made more than eight years after the entry of the December 1990 paternity judg-

ment, Ms. Hightower asked that the court dismiss his motion.

On January 21, 2000, the court entered a judgment overruling, among other motions, Mr. Hill's motion for summary judgment. The judgment read as follows:

### JUDGMENT

Respondent/Movant's **MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, MOTION FOR INTERLOCUTORY ORDER OF DEFAULT FOR FAILURE TO FILE AN ANSWER OR IN THE ALTERNATIVE, MOTION FOR INTERLOCUTORY ORDER OF DEFAULT FOR FAILURE TO SUBMIT TO BLOOD TESTS** coming on for hearing, the Court reviewing suggestions in support, suggestions in opposition and the respondent's reply suggestions. Reluctantly, the Court must overrule respondent's motion for summary judgment, for interlocutory order of default and also for interlocutory order of default for failure to submit to blood tests. The Statute in question's effective date was August 28, 1993. The child in question here came within the old Statute. This Court, therefore, has no jurisdiction with respect to the paternity issue. The Court notes, however, that the respondent does have a cause of action for fraud against the petitioner if in fact the facts alleged herein are true.

/s/

Mr. Hill filed this appeal.

### The January 21, 2000 Judgment was Final and Appealable

In phrasing all four of his points on appeal, Mr. Hill alleges error in the trial court's overruling his motion for summary judgment on his motion for relief from the December 1990 paternity judgment. The denial of a motion for summary judgment

is not an appealable order. *Betts–Lucas v. Hanson*, 31 S.W.3d 484, 485 (Mo.App. 2000). This is because the denial of a summary judgment motion is not a final judgment. *Gorman v. Farm Bureau Town & Country Ins. Co.*, 977 S.W.2d 519, 527 (Mo.App.1998). At oral argument, both parties asserted, however, that the ruling appealed from in this case did more than just overrule Mr. Hill's motion for summary judgment. The parties contended that the ruling implicitly granted Ms. Hightower's motion to dismiss and, therefore, the ruling constitutes a final and appealable judgment.

■ When undertaking to understand the meaning of a judgment, this court makes its own independent assessment, since "[c]onstruction of a court order is a question of law." *Jacobs v. Georgiou*, 922 S.W.2d 765, 769 (Mo.App.1996). "The general rules of construction for written instruments are used to construe court judgments." *Dover v. Dover*, 930 S.W.2d 491, 495 (Mo.App.1996). Thus, the test for whether an ambiguity exists is whether the judgment "is reasonably susceptible to different constructions." *See Disabled Veterans Trust v. Porterfield Constr., Inc.*, 996 S.W.2d 548, 552 (Mo.App.1999). In construing an ambiguous judgment, this court's task "is to ascertain the intention of the [trial] court in entering the order." *Jacobs*, 922 S.W.2d at 769. The words and clauses used in a judgment are to be construed according to their natural and legal import. *Panettiere v. Panettiere*, 945 S.W.2d 533, 539 (Mo.App.1997).

■ Looking at the court's ruling in this case, this court finds that it is reasonably susceptible to different constructions and, therefore, is ambiguous. While the judgment states that the court is overruling Mr. Hill's motion for summary judgment and his alternative motions for interlocutory orders of default, the judgment also contains several indicators that the court was additionally dismissing Mr. Hill's motion for relief from the paternity judgment. Thus, to construe this ambiguous judgment, this court must ascertain the trial court's intention in entering the judgment.

The trial court's ruling in this case was in writing, signed by the judge, and denominated a "judgment." The ruling satisfies Rule 74.01(a)'s "bright line" test for when a writing is a judgment. *City of St. Louis v. Hughes*, 950 S.W.2d 850, 853 (Mo. banc 1997). Satisfaction of Rule 74.01(a)'s requirements indicates that the trial court intended that the ruling be final and appealable, and that the court did not seek to retain jurisdiction over the issue of paternity. *Id.* In fact, the court stated in its ruling that it did not believe it had jurisdiction over the paternity issue. The court's ruling in this regard was based upon one of the grounds listed in Ms. Hightower's motion to dismiss Mr. Hill's petition. Specifically, it was based upon Ms. Hightower's assertion that the 1988, and not the 1993, version of § 210.826 applied and, therefore, the five-year statute of limitations operated to bar Mr. Hill's cause of action.

The court found that the effective date of the "statute in question" was August 28, 1993. Presumably, the court was referring to the effective date of § 210.826, RSMo Cum.Supp.1993, since it was the only statute whose effective date was questioned. Because it determined that § 210.826, RSMo Cum.Supp.1993, did not go into effect until August 28, 1993, which was six days after Brett's fifth birthday, the court found that "[t]he child in question here came within the old Statute." The court concluded, therefore, that it did not have jurisdiction with respect to the paternity issue. From the trial court's conclusion that it did not have jurisdiction over the paternity issue, the fact that this

finding was based upon one of the grounds asserted in Ms. Hightower's motion for dismissal, and the court's satisfying Rule 74.01(a)'s requirements for indicating its ruling was a final judgment, this court finds that the trial court's intention was that its January 21, 2000 ruling be a final and appealable judgment granting Ms. Hightower's motion to dismiss Mr. Hill's motion for relief from the paternity judgment.

## Mr. Hill's Motion Should Have Been Treated as an Independent Action in Equity

■ Having found that the January 21, 2000 judgment was a final and appealable judgment of dismissal, this court next turns to the merits of the dismissal. The court found that the 1988, rather than the 1993, version of § 210.826 applied to Mr. Hill's motion. The 1988 version of § 210.826.1, provided, in pertinent part, as follows:

1. A child, his natural mother, a man presumed to be his father under subdivision (1), (2), or (3) of subsection 1 of section 210.822, or the division of child support enforcement may bring an action:

* * *

(2) For the purpose of declaring the nonexistence of the father and child relationship presumed under subdivision (1), (2), or (3) of subsection 1 of section 210.822 only if the action is brought within a reasonable time after obtaining knowledge of relevant facts, but in no event later than five years after the child's birth. After the presumption has been rebutted, paternity of the child by another man may be determined in the same action, if he has been made a party.

* * *

The 1993 version of § 210.826.1 abolished the five-year statute of limitations, and provided as follows:

1. A child, his natural mother, a man presumed to be his father under subdivision (1), (2), or (3) of subsection 1 of section 210.822, a man alleging himself to be a father or the division of child support enforcement may bring an action at any time for the purpose of declaring the existence or non-existence of the father and child relationship presumed under subdivision (1), (2), or (3) of subsection 1 of section 210.822.

Applying the 1988 version, the court dismissed Mr. Hill's motion on the basis that the five-year statute of limitations barred Mr. Hill's claim with respect to the paternity issue.

Mr. Hill's motion for relief from the December 1990 paternity judgment was not governed by § 210.826.1, however. Section 210.826.1(2), RSMo Supp.1988, and the five-year statute of limitations contained therein, governed actions to declare the nonexistence of the *presumed* father and child relationship as that presumption was defined in subdivisions (1), (2), or (3) of subsection 1 of § 210.822, RSMo Supp. 1988. Subdivisions (1), (2), and (3) of subsection 1 of § 210.822, RSMo Supp.1988, provided as follows:

A man is presumed to be the natural father of a child if:

(1) He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within three hundred days after the marriage is terminated by death, annulment, declaration of invalidity, or dissolution, or after a decree of separation is entered by a court; or

(2) Before the child's birth, he and the child's natural mother have attempted to

marry each other by a marriage solemnized in apparent compliance with the law, although the attempted marriage is or could be declared invalid, and:

(a) If the attempted marriage could be declared invalid only by a court, the child is born during the attempted marriage, or within three hundred days after its termination by death, annulment, declaration of invalidity, or dissolution; or

(b) If the marriage is invalid without a court order, the child is born within three hundred days after the termination of cohabitation; or

(3) After the child's birth, he and the child's natural mother have married, or attempted to marry each other by a marriage solemnized in apparent compliance with law, although the marriage is or could be declared invalid, and:

(a) He has acknowledged his paternity of the child in writing filed with the bureau; or

(b) With his consent, he is named as the child's father on the child's birth certificate; or

(c) He is obligated to support the child under a written voluntary promise or by court order[.]

■ For a man to be presumed to be the natural father of a child under these subsections, he and the child's natural mother must have either been married or attempted to marry either before or after the child's birth. Mr. Hill did not plead in his motion that he and Ms. Hightower ever married or attempted to marry at any time. Mr. Hill was not a "presumed" father as that term was defined in § 210.822.1(1), (2), or (3), RSMo Supp. 1988; therefore, he could not bring an action pursuant to § 210.826.1(2), RSMo Supp.1988, to declare the nonexistence of the father and child relationship presumed under those subsections.[1] Therefore, the trial court's dismissal of his motion on the basis that it was barred by the time limitation contained in § 210.826.1(2), RSMo Supp.1988, was erroneous.[2]

■ Nevertheless, in reviewing a judgment of dismissal, this court must affirm the dismissal "if it can be sustained on any ground which is supported by the motion to dismiss, regardless of whether the circuit court relied on that ground." *Keys v. Nigro*, 913 S.W.2d 947, 951 (Mo.App.1996). In fact, "[i]f the court correctly dismissed the [motion], the ground upon which the dismissal was based is immaterial." *J.M.*

1. The 1993 version of § 210.826.1 also states that it applies to "presumed" fathers as that term is defined in § 210.822.1(1), (2), and (3). The definitions contained in the 1993 version of § 210.822 .1(1), (2), and (3), are substantively similar to those in the 1988 version. Thus, because the definitions of "presumed" fathers as contained in the 1993 version of § 210.822.1(1), (2), and (3) do not apply to Mr. Hill, the 1993 version of § 210.826.1 also does not apply to Mr. Hill's claim.

2. Ms. Hightower argues that Mr. Hill agreed that he was a presumed father pursuant to § 210.822.1(4) and, therefore, the statute of limitations contained in § 210.826.1 applies. But the plain language of § 210.826.1 states that it applies to presumed fathers only under

subdivisions (1), (2), or (3) of § 210.822.1. Ms. Hightower also argues that this court must defer to the trial court's "factual" determinations that Mr. Hill is a presumed father under § 210.822.1(1), (2), or (3), and that, as a result, § 210.826.1 applies to his cause of action. Whether a statute applies to a particular set of facts is a question of law, however, which this court reviews *de novo*. *See Cole ex rel. Cole v. Warren County R-III School Dist.*, 23 S.W.3d 756, 760 (Mo.app. 2000). The record before this court is void of any evidence that Mr. Hill met the definition of a presumed father under § 210.822.1(1), (2), or (3). Thus, this court finds as a matter of law that § 210.826.1 does not apply to Mr. Hill's cause of action.

*Morris Constr. Co. v. Mid–West Precote Co.,* 613 S.W.2d 180, 181 (Mo.App.1981).

■ In his motion for relief from the paternity judgment, Mr. Hill stated that he was seeking relief from the judgment under Rule 74.06(b) on the bases of fraud, misrepresentation, and the misconduct of the adverse party, Ms. Hightower. In Ms. Hightower's supplemental motion to dismiss, she alleged that Mr. Hill's motion for relief from the December 1990 paternity judgment on the basis of Rule 74.06(b) should be dismissed because he filed it more than one year after the judgment was entered. Rule 74.06(b) provides that the trial court can relieve a party from a final judgment or order for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is irregular; (4) the judgment is void; or (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment remain in force.

A party seeking relief under subdivision (b) of Rule 74.06 must make the motion "within a reasonable time and for reasons (1) and (2) and (3) of subdivision (b) not more than one year after the judgment or order was entered." 74.06(c). Here, Mr. Hill's motion was filed in March 1999, more than eight years after the entry of the December 1990 paternity judgment. Mr. Hill's motion was thus untimely filed, and he was barred from seeking relief under Rule 74.06(b)(2). *See Juenger v. Brookdale Farms,* 871 S.W.2d 629, 631 (Mo.App.1994).

■ This court notes, however, that the one-year time limitation barring a claim to set aside a judgment on the basis of fraud under 74.06(b) "does not limit the power of the court to entertain an independent action to relieve a party from a judgment or order to set aside a judgment for fraud upon the court." 74.06(d). This provision has been interpreted to allow a party to bring an independent cause of action to set aside a judgment on the basis of extrinsic fraud. *Essig v. Essig,* 921 S.W.2d 664, 667 (Mo.App.1996). Extrinsic fraud is " 'fraud that induced a party to default or to consent to judgment against him.' " *Sanders v. Ins. Co. of N. Am.,* 904 S.W.2d 397, 401 (Mo.App.1995) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 70 cmt c. (1982)).

Although raised in a post-final-judgment motion, Mr. Hill's motion to set aside the paternity judgment on the basis of extrinsic fraud may be treated as an independent petition in equity if the substance of his motion was "sufficient to invoke the equitable powers of the court." *See Sprung v. Negwer Materials, Inc.,* 727 S.W.2d 883, 889 (Mo. banc 1987). In his motion, Mr. Hill alleged that prior to the entry of the December 1990 paternity judgment, Ms. Hightower had misrepresented to the Director, the court, and Mr. Hill that Mr. Hill was Brett's father. Specifically, he alleged that prior to the entry of the December 1990 paternity judgment, he submitted to a paternity test. According to Mr. Hill, Ms. Hightower told Mr. Hill, the court, and the Director that she also submitted herself and Brett to the paternity test, and the test determined that Mr. Hill was Brett's father. Mr. Hill further alleged that, in fact, Ms. Hightower did not submit herself and Brett to the paternity test, and committed perjury by stating otherwise. Mr. Hill claimed that he consented to the 1990 paternity judgment because of Ms. Hightower's misrep-

resentation regarding the results of the alleged paternity test. Mr. Hill's allegations sufficiently pled an equitable claim for relief from the December 1990 paternity judgment on the basis of extrinsic fraud.[3] The trial court erred in not treating Mr. Hill's motion as an independent action in equity to set aside the paternity judgment.[4] Therefore, the judgment of the trial court dismissing Mr. Hill's petition is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

All concur.

3. In *State ex rel. Wade v. Frawley,* 966 S.W.2d 405, 406 (Mo.App.1998), the Eastern District held that the trial court was without authority to compel a mother and child to submit to a paternity test. The paternity test had been requested by the father to support his motion to vacate, on the basis of extrinsic fraud, a consent judgment of paternity entered twelve years earlier. *Id.* at 405–06. The court found that any paternity test results were irrelevant to the father's claim of extrinsic fraud, as the results could not establish the father's state of mind at the time he agreed to the paternity judgment, or the mother's state of mind when she told him he was the father. *Id.* at 406. Because the paternity test results were irrelevant to any claim of extrinsic fraud, the court found that the father's action was really one to establish the nonexistence of the presumed father and child relationship under § 210.822.1(3), RSMo Supp.1988, and thus was barred by the five-year statute of limitations contained in § 210.826.1(2), RSMo Supp.1988. *Id.* It is not necessary for this court to consider the correctness of the rulings in *Wade,* however, because *Wade* is dis-

tinguishable from this case. Here, this court finds that Mr. Hill properly pled a claim for extrinsic fraud in his motion to set aside the consent judgment of paternity. Moreover, unlike the father in *Wade,* Mr. Hill never met any definition of a presumed father under § 210.822.1(1), (2), or (3), RSMo Supp.1988, and therefore could not bring an action under § 210.826.1(2), RSMo Supp.1988, to declare the nonexistence of the presumed father and child relationship. This court, therefore, finds that *Wade* does not govern.

4. Because the trial court should have treated Mr. Hill's motion as an independent action in equity to set aside the December 1990 paternity judgment on the basis of extrinsic fraud, Ms. Hightower's other ground for seeking dismissal of Mr. Hill's motion—that it was barred by *res judicata* and collateral estoppel—does not support affirming the dismissal. The principles of *res judicata* and collateral estoppel do not apply to bar a claim to set aside a judgment obtained by extrinsic fraud. *Sanders,* 904 S.W.2d at 401.